UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DARIAN MCKINNEY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 22-2137 (ABJ) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff Darian McKinney, a former teacher with the District of Columbia Public Schools ("DCPS") brings this action against defendant, the District of Columbia, alleging that its decision not to rehire him breached a settlement agreement between the parties and deprived him of due process. *See* Compl. [Dkt. # 1-2]. Defendant has filed a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss [Dkt # 7] ("Mot."). Because plaintiff fails to state a claim of breach of contract or any violation of due process, the Court will grant the motion.

## BACKGROUND

The following facts are set forth in the complaint. Plaintiff is a health and physical education teacher certified to teach in the District of Columbia and the state of Maryland. Compl. ¶¶ 8–9. He currently teaches and coaches at a public school in Prince George's County, Maryland. Compl. ¶ 11. Plaintiff was employed as a DCPS teacher from 2015 through 2018. Compl. ¶ 12. As part of his hiring process in 2015, DCPS conducted a routine background check. Compl. ¶ 13. It informed plaintiff that he failed the background check, but he successfully appealed the

determination to the D.C. Commission on Human Rights and began teaching at a school in the District in 2015. Compl. ¶¶ 14–15.

Plaintiff alleges that in 2018, "an event occurred which caused DCPS to conduct a new background check." Compl. ¶ 16. The "event" is not identified in the complaint. In the same year, a "separate dispute" arose between the parties regarding plaintiff's employment. Compl. ¶ 17. Plaintiff does not describe the dispute in his complaint, but he states that it was handled administratively, and he was placed on administrative leave in the summer of 2019. Compl. ¶¶ 17–18. On November 1, 2019, the parties resolved "all of the issues between them" by entering into a written settlement agreement ("Settlement Agreement"). Compl. ¶ 27; *see* Settlement Agreement, Ex. 1 to Mot. [Dkt. # 7-1]. As part of the agreement, plaintiff agreed to resign from his employment with DCPS with a retroactive effective date of August 27, 2019. Settlement Agreement at 2. The agreement also provided that plaintiff could apply for DCPS teaching positions for the 2020 school year, and that if he was rehired within one year of the agreement, he would not have a break in service for purposes of his pension, salary, and sick leave benefits. Compl. ¶¶ 29–30.

In July 2020, the principal of Kelly Miller Middle School contacted plaintiff about a teaching vacancy in the health and physical education department. Compl. ¶ 31. Plaintiff interviewed for the position and received an offer, which he accepted, so his name was submitted to DCPS for administrative processing, including the mandatory background check. Compl. ¶¶ 32–33. In August 2020, the "DCPS Career Office" informed plaintiff in an email that the DCPS Office of Security found him ineligible because of a "failed" background check. Compl. ¶ 34. Plaintiff claims that DCPS did not in fact conduct a background check, and that there was no legitimate basis for him to have failed one. Compl. ¶¶ 35–36. He further alleges that he sought

to appeal the failed background check by repeatedly contacting DCPS, but that DCPS never responded "and did not provide him with its actual written determination of ineligibility, or any appeals process for it." Compl. ¶ 49.[1]

In early 2021, plaintiff again applied for positions with DCPS. Compl. ¶ 50. But he alleges that some of his applications were "never acknowledged" by the school district's electronic hiring system, and that he was found ineligible for other positions due to a "failed" background check, even though he had not yet interviewed for, been offered, or accepted a position, and had not "been submitted for background check processing." Compl. ¶¶ 51–52. He claims that as in 2020, he did not receive any mailed written determination of ineligibility or instructions about the appeals process from the DCPS Office of Security. Compl. ¶ 54. While plaintiff alleges that he repeatedly contacted DCPS to try to appeal the "failed" background checks, he did not receive any responses. Compl. ¶¶ 57–58.

In the spring of 2021, plaintiff applied and interviewed for a teaching position at Eliot Hine Middle School in the health and physical education department. Compl. ¶¶ 61–63. After he accepted the offer, his name was submitted for the administrative hiring process, including the mandatory background check. Compl. ¶ 64. But plaintiff claims that in May 2021, the DCPS Career Office emailed him that the DCPS Office of Security had again determined that he was ineligible for hire due to a "failed" background check. Compl. ¶ 65. Plaintiff alleges that no

---

1  Plaintiff asserts that he had successfully appealed two failed background checks to the D.C. Commission on Human Rights in 2015 and 2019, and that in both instances, he received the "email advisement from the DCPS Career Office and the mailed written determination and appeals instructions from the DCPS Office of Security." Compl. ¶¶ 37, 46. He states that in 2020, he received only the email. Compl. ¶ 46–47.

background check had actually been conducted, Compl. ¶¶ 66–67, and that his attempts to appeal the decision were ignored. Compl. ¶¶ 69–70.

Plaintiff asserts in his complaint that the "alleged 'ineligible' findings by the DCPS Office of Security constitute determinations under D.C. Code § 4–1501.05a that [he] presents a present danger to children or youth," which have harmed his reputation, stigmatized him, and precluded him from obtaining employment in his chosen field of "educational institutions in D.C." Compl. ¶¶ 90–93. He also complains that the allegedly false background check determinations will be communicated to prospective employers in the District and elsewhere when he "seeks recertification to teach in the District" in 2024 "and/or [ ] is submitted for administrative processing by DCPS or the Office of the State Superintendent of Education for teaching positions." Compl. ¶¶ 94–95.

On May 20, 2022, plaintiff filed a seven count complaint in the Superior Court of the District of Columbia. Compl. ¶¶ 102–115. Defendants removed the case to this Court on July 20, 2022, pursuant to 28 U.S.C. §§ 1441(a) and 1446. *See* Notice of Removal [Dkt. # 1]. Counts One, Two, and Three allege that DCPS breached the Settlement Agreement, "including the implied covenant of good faith and fair dealing," by falsely claiming that plaintiff "failed" the DCPS background checks and by not permitting him to appeal the alleged failures with respect to: the 2020 application for the position at Kelly Miller Middle School (Count One); the positions for which he "applied but did not even interview" in 2021 (Count Two); and the 2021 application for the position at Eliot Hine Middle School (Count Three). Compl. ¶¶ 102–107.

Counts Four, Five, and Six allege due process violations with respect to the same positions. In Count Four, plaintiff alleges that DCPS violated his "right to due process to protect a property interest by failing to process his 2020 hiring for the position at Kelly Miller M.S." according to its

"established, lawful procedures" and "depriving him of any opportunity to be heard." Compl. ¶ 109. Count Five alleges that DCPS violated his "right to due process to protect a property interest by violating or ignoring its established, lawful hiring procedures to preclude him from being considered for the positions for which he applied in 2021, but had not yet interviewed," without an opportunity to be heard. Compl. ¶ 111. Count Six similarly alleges that DCPS violated plaintiff's "right to due process to protect a property interest by failing to process his 2021 hiring for the position at Eliot Hine M.S." Compl. ¶ 113. Plaintiff's final claim contends that DCPS violated his "right to due process to protect a liberty interest by falsely labeling him as someone who presents a danger to children and youth, and who is ineligible to teach in D.C., and failing to provide him an appeals process to redress that labeling." Compl. ¶ 115.

Plaintiff seeks relief in the form of an injunction prohibiting defendant from violating the Settlement Agreement in the future; an order of specific performance directing that defendant provide "retirement and other benefits to [plaintiff] as though he had been employed by DCPS" for the 2020 and 2021 school years; and an order requiring that defendant remove from its records any references to plaintiff's having failed a background check in 2020 or 2021. Compl. at 20. He also seeks punitive damages, attorneys' fees and other costs associated with this action, and compensatory damages of no less than $ 6,000,000. Compl. at 20–21.

On September 26, 2022, defendant moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). *See* Mot. The matter is fully briefed. *See* Pl.'s Opp. to Mot. [Dkt. # 8] ("Opp."); Reply Mem. in Supp. of Def.'s Mot. [Dkt. # 10] ("Reply").

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

5

556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).  Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions.  *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242

(D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I. Plaintiff fails to state a breach of contract claim.

Counts One through Three allege that defendant breached the terms of the Settlement Agreement, "including the implied covenant of good faith and fair dealing." Compl. ¶¶ 102–107. To prevail on a breach of contract claim, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009), citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). In the District of Columbia, "every contract contains an implied covenant of good faith and fair dealing" that obligates the contracting parties to refrain from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015) (citations omitted). To state a claim for breach of this implied covenant, a plaintiff must allege "bad faith or conduct that is arbitrary and capricious." *Abdelrhman v. Ackerman*, 76 A.3d 883, 891–92 (D.C. 2013). Bad faith goes beyond "mere negligence," but may be a showing of a "lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform." *Wright v. Howard University*, 60 A.3d 749, 754 (D.C. 2013).

The parties agree that the Settlement Agreement meets the requirement of a valid contract between the parties. But the defendant argues that the Agreement does not create an obligation or duty for DCPS to rehire plaintiff or provide him with any rights in the hiring process. Mot. at 10. Plaintiff does not point to any provision in the contract giving rise to those obligations or duties, but he explains that "each breach of contract claim . . . is premised on an allegation that DCPS <u>falsely</u> advised Mr. McKinney that he had failed a background check and precluded him from appealing that alleged failure," which, he maintains, states a claim for breach of the implied covenant of good faith and fair dealing. Opp. at 13 (emphasis in original).

The Court agrees with the defendant that the plain terms of the parties' Settlement Agreement do not create any obligation or duty for the District to rehire the plaintiff. The Agreement states that plaintiff "shall be allowed to apply for teaching positions at DCPS starting [sic] the 2020-2021 school year," but not that his application would be accepted. Settlement Agreement ¶ 4.[2] If plaintiff were rehired within one year, the Agreement further establishes rights related to the salary and benefits he would receive, *id.* at ¶¶ 5–7, but none of that confers any rights related to the hiring process or any related background checks, as plaintiff alleges.

For those reasons, plaintiff has not alleged a breach of contract, and he has not alleged a breach of the implied covenant of good faith and fair dealing either, because the covenant is bounded by the scope of the contract. The implied covenant of good faith and fair dealing "does not require a party to waive or rewrite the terms of the contract." *Sibley v. St. Albans Sch.*, 134 A.3d 789, 806 (D.C. 2016); *see also C & E Services, Inc. v. Ashland Inc.*, 601 F. Supp. 2d

---

2   Plaintiff concedes this point in his procedural due process argument when he states that his re-employment "was not itself guaranteed," and that the Settlement Agreement contained a contractual "right to *re-apply* for reemployment" – not a right *to* reemployment. Opp. at 6–7 (emphasis added).

262, 275 (D.D.C. 2009) ("the duty [of good faith and fair dealing] must arise out of a contract between the parties. . . the duty is not a means to add new terms to the agreement"), citing *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 626–27 (D.C. 1997); *Metz v. BAE Systems Technology Solutions & Services, Inc.*, 979 F. Supp. 2d 26, 33 (D.D.C. 2013) (finding that defendant's alleged interference with plaintiff's ability to seek employment with defendant's non-competitors could not give rise to a claim for breach of the implied covenant of good faith and fair dealing because the contract did not contain such a right). While the implied covenant of good faith and fair dealing would obligate the defendant to refrain from doing anything which would destroy or injure plaintiff's right to "receive the fruits of the contract," *Sundberg*, 109 A.3d 1123 at 1133, quoting *Abdelrhman*, 76 A.3d at 891, in this case, that would be plaintiff's right to re-apply for employment, not to be accepted.

Because plaintiff has failed to state a claim for breach of contract, Counts One, Two, and Three will be dismissed.

## II. Plaintiff fails to state a due process claim based on a property interest.

Counts Four through Six allege violations of plaintiff's "right to due process to protect a property interest" with respect to the positions he applied to in 2020 and 2021. Compl. ¶¶ 109–113. The Due Process Clause of the Fifth Amendment forbids the government from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014), quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). If the answer is yes, then the Court considers "whether the procedures used by the Government in effecting the deprivation 'comport with due process.'" *Ralls,* 758 F.3d at 315.

Here, plaintiff has not alleged a property interest that would satisfy the first step in the inquiry. To establish a property interest in a benefit, "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Roth v. King*, 449 F.3d 1272, 1284 (D.C. Cir. 2006). Instead, he must "have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. at 756. Such an entitlement is "created and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577–78 (1972) (holding that assistant professor at a state university did not have a property interest in being rehired under the Fourteenth Amendment when this was not secured by the terms of his appointment, state statute, or university policy).

Plaintiff claims that the District deprived him of his property interest in the teaching positions by "failing to process his hiring" with respect to the positions he'd been offered at Kelly Miller Middle School in 2020 and Elliot Hine Middle School in 2021, and when it failed to consider him for other 2021 positions for which he applied in accordance with the District's "established, lawful procedures." Compl. ¶¶ 109–113. But the essential property interest is missing, because "ordinarily there is of course no 'legitimate claim of entitlement' . . . to be appointed" to a particular government job. *Molerio v. F.B.I.*, 749 F.2d 815, 823 (D.C. Cir. 1984), citing *Roth*, 408 U.S. at 577, and *MacFarlane v. Grasso*, 696 F.2d 217, 221–22 (2d Cir. 1982) ("Ordinarily, an applicant for government employment does not have a property interest in the position he seeks."); *see also White v. Off. of Pers. Mgmt.*, 787 F.2d 660, 665 (D.C. Cir. 1986) (holding that an administrative law judge applicant did not possess a protected property interest in pursuit of that employment).

To establish the existence of a property right, a plaintiff must show "'a legitimate expectation, based on rules (statutes or regulations) or understandings (contracts, express or implied), that he would continue in his job.'" *Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994), quoting *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988). But the facts in the complaint do not give rise to a plausible inference that plaintiff had an expectation based on DCPS rules or a contract. While plaintiff points to the Settlement Agreement as a source of his property interest, Opp. at 6–7, the Agreement did not bind the District to rehire him such that plaintiff had a "legitimate claim of entitlement" to a position.[3] Moreover, even the offers extended by the two schools, subject to further administrative processing, did not give rise to a legitimate expectation under the due process clause. *See Nat'l Treasury Emp. Union v. Reagan*, 509 F. Supp. 1337, 1341 (D.D.C. 1981) (finding that offers of federal employment did not give rise to protected property interest for due process purposes where the plaintiffs had received "mere offers of jobs which do not rise to the level of 'appointments' to the federal civil service").

Because plaintiff has failed to allege a cognizable property interest, he cannot state a procedural due process claim. *See Roberts v. United States*, 741 F.3d 152, 162 (D.C. Cir. 2014)

---

3   Plaintiff compares his case to an out-of-circuit decision that held that a schoolteacher had a legitimate claim of entitlement to remain on a hiring eligibility list after being removed, and therefore could not be removed from that list without due process. Opp. at 7, citing *Stana v. School Dist. of City of Pittsburgh*, 775 F.2d 122 (3d Cir. 1985). But in *Stana*, the plaintiff had met certain requirements to remain on the eligibility list, which the school district "had created through the policies it promulgated to implement the state statute on teacher hiring." *Stana*, 775 F.2d at 126–27. The court therefore found that remaining on the eligibility list was a "legitimate entitlement" that plaintiff already possessed based on "both an existing policy or rule and an explicit understanding sufficient to constitute a property interest." *Id.* No such deprivation of any right previously secured by a statute or code exists in the case at hand. And, as defendant points out, the Third Circuit has limited *Stana*'s holding in the context of job applicants. *See Anderson v. Philadelphia*, 845 F.2d 1216, 1220 (3d Cir. 1988) (holding that unlike the plaintiff in *Stana*, plaintiffs that "were never more than applicants for employment by the City" had no claim of entitlement to employment to establish a property interest).

(rejecting plaintiff's argument that she had a "property interest in a fair evaluation process," because a "'fair evaluation process' is still a process, not a substantive interest in liberty or property."). Therefore, Counts Four, Five, and Six will be dismissed.

### III.     Plaintiff fails to state a due process claim based on a liberty interest.

In Count Seven, plaintiff alleges that the District deprived him of a liberty interest "by falsely labeling him as someone who presents a danger to children and youth, and who is ineligible to teach in D.C., and failing to provide him an appeals process to redress that labeling." Compl. ¶ 115. The Supreme Court has recognized that there is a due process liberty interest in one's reputation. *See Roth*, 408 U.S. at 573 ("(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential") (internal citations omitted). A plaintiff may allege a reputation-based due process violation under one of two theories: a "reputation-plus" theory or a "stigma" theory. *See O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998); *Hutchinson v. CIA*, 393 F.3d 226, 231 (D.C. Cir. 2005). Plaintiff fails to state a claim under either.

#### A.     Plaintiff's claims fail under a reputation-plus theory.

The first category of a reputation-based due process violation requires "the conjunction of official defamation and [an] adverse employment action." *O'Donnell*, 148 F.3d at 1140. "For a defamation to give rise to a right to procedural due process, it is necessary. . . that the defamation be accompanied by a discharge from government employment *or at least a demotion in rank and pay*." *Id.*, citing *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983) (emphasis in original). Even if plaintiff has plausibly alleged that he was defamed by the District's allegedly false statements about his background checks, he fails to satisfy the second requirement: he was neither discharged nor demoted from an employment position when the District made reference to a failed

background check.  Rather, the allegations underlying his claims relate to his attempts to seek re-employment with the District.  Rehiring does not fall within the scope of reputation-plus claims, which "rest[ ] on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired."  *O'Donnell*, 148 F.3d at 1140; *see also Lea v. D.C.*, No. CV 22-1396 (JEB), 2022 WL 3153828, at *4 (D.D.C. Aug. 8, 2022) (finding that an applicant with an offer for a D.C. government position that was later revoked failed to establish the necessary relationship for a reputation-plus claim).  Therefore, plaintiff has not plausibly alleged deprivation of his liberty interest under the reputation-plus theory.

      **B.**      **Plaintiff's claims fail under the stigma theory.**

To bring a claim under the stigma theory, a plaintiff must allege the "combination of an adverse employment action and 'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities.'"  *O'Donnell*, 148 F.3d at 1140, quoting *Roth*, 408 U.S. at 573.  The Court does not need to decide whether plaintiff has alleged the necessary "adverse employment action" to implicate the stigma theory because assuming that

a failure to re-hire applies,[4] plaintiff's claims still fail to meet the second requirement: he has not alleged that he has been effectively "foreclosed" from some category of work.

To survive a motion to dismiss, plaintiff must show that the government's actions either "(a) automatically exclude[] [him] from a definite range of employment opportunities. . . or (b) broadly preclud[e] [him] from continuing in [his] chosen career." *Kartseva*, 37 F.3d 1524 at 1527. If plaintiff "has merely lost one position in [his] profession but is not foreclosed from reentering the field," then he has not carried his burden. *Kartseva*, 37 F.3d at 1529. Rather, his "ability to pursue his chosen profession" must have been "seriously affected, if not destroyed." *O'Donnell*, 148 F.3d at 1141-42, citing *Kartseva*, 37 F.3d at 1529.

Plaintiff argues that the District has "'foreclosed [him] from entering the field' of education in the entirety of the jurisdiction of the District of Columbia." Opp. at 11, citing *id.* at 1529. However, under D.C. Circuit precedent, the fact that plaintiff currently teaches and coaches at a public school in Maryland undermines the stigma claim. While plaintiff alleges that DCPS pays its teachers higher salaries than he currently receives, Compl. ¶ 80, his current job "demonstrates that the stigma he suffered cannot have been too disabling" such that his ability to pursue his

---

4  The District argues that this theory cannot apply to plaintiff's claim because "[t]he government's relationship with an applicant for a particular job does not implicate the due process clause's protection of liberty interests." *White v. Off. of Pers. Mgmt.*, 787 F.2d 660, 665 (D.C. Cir. 1986). But *White* focused on a *particular* job, and did not involve a reputation-based due process violation; indeed, the Court of Appeals went on to note that plaintiff, an administrative law judge applicant, had not been debarred from *all* employment with the government, "a circumstance that in our day might involve his constitutionally protected liberty interests." *Id.*; *see also Kartseva v. Dep't. of State*, 37 F.3d 1524, 1527 (D.C. Cir. 1994) (holding that State Department's denial of government contractor's security clearance "might have changed [her] status and thus implicated a liberty interest"); *Lea*, 2022 WL 3153828 at *5 (finding that job applicant alleged an adverse government action – the refusal to hire her due to her "unsuitability" determination – for purposes of the stigma theory because "the Circuit has repeatedly narrowed the category of 'adverse employment actions' in the reputation-plus context without explicitly doing the same in the stigma-plus context.")

chosen profession has been "seriously affected, if not destroyed." *O'Donnell*, 148 F.3d at 1141–42 (holding that a former Deputy Chief of Police in the District of Columbia did not suffer stigma given that he had obtained employment as the police chief in a small town in Maryland, even if he had "intended to seek out a job as chief of police of a large city").  While the Court is sympathetic to plaintiff's stated concerns that the allegedly "false, adverse information will be disclosed publicly, including to the State of Maryland, as part of his mandatory DC teaching certificate renewal process," Opp. at 10, these hypothetical and speculative harms are insufficient to give rise to a plausible inference that the plaintiff has been so broadly precluded from teaching that his right to liberty has been infringed.

Because plaintiff has failed to allege a reputation-based due process violation under either a reputation-plus or stigma theory, the Court will dismiss Count Seven.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** defendant's motion to dismiss [Dkt. # 7] on all counts.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 31, 2024